Good morning. We're pleased to court Frank Weitz on behalf of the appellants. Before I get into my substantive argument, I would like to point out to the court that I think there is some inconsistency between the DB's argument at page 36 and the evidence in the record. At page 36 of the volume 3, excuse me, page 36 of DB's reply brief, the appellee's brief, they make the statement that they never contended that Chris Choi was not an officer of Pinnacle. But yet at, I believe, page 346, volume 3, which is the excerpt of the record, which is in fact a letter from Louis Brisbois, same counsel as we have here in this case, they stated in a letter to both Mr. Choi, my client, to the effect that there is no evidence that Chris Choi is an officer of the company. So I do think that that bears some note here. I think it has some effect here on my argument based on judicial estoppel. It also has some argument, some narrative also, I think, on the basis of ostensible authority. I mean, they sent a letter that said you didn't really paper this right, this letter that was sent about the assignment. And they pointed out some defects in it. Why wasn't it just fixed? It would seem to be a lot easier if there were some real deficiencies and more. Okay. The counsel has gone off. He dropped off. Oh, thank you. I didn't even realize that we were missing. Okay. So let's, sorry, let's pause. Thanks for interrupting us. I apologize for not catching that. Okay. Let's see. Mr. Blumhart, is that how you pronounce your name? Yes. Okay. So can you just fill us in on how much, when did you drop off? I didn't drop off. I heard everything. It was my video. It wasn't working.  Well, you can find yourself back on mute, and we'll get to you in a minute. Thank you. Okay. Very good. Please continue. So I think, Judge Collins, if I understand your question, certainly I think the formal assignment is not an absolute model of clarity. It's not written by a lawyer. But I think the evidence is clear on the record that there's more than a cento of evidence, both with the assignment and the recorded document of the Secretary in the Secretary of State's office that Chris Troy was an officer of Pinnacle. And his testimony in his deposition, I believe it's that case 379, Volume 3 of the Executive Record, I asked him directly whether he had actual authority by Pinnacle to make the assignment. He specifically said yes. I asked him then, is that the reason why his father, James Troy, did not make any further assignment? He said yes. And I think that there's a more than a cento of evidence under the Celotek standard that clearly there was some track and ratio here of ostensible authority. Chris Troy was the one who negotiated with DB the first payment, which was at least $605,000. He was the one who made the claim. He was the one who specified the damage. DB had no contact with James Troy, the Susan Troy. So it seems to me that it was... I mean, this is all, I think, without dispute. But the question in my mind is whether or not Chris Troy was ever assigned the right from Pinnacle to make the transfer of insurance or whether or not he was appointed as an agent. And the district court found on both of those points there was no such evidence, and that's why summary judgment was entered. So whether he was an officer, whether he negotiated, whether he involved himself in the transaction really doesn't matter because either Pinnacle, James Troy, its owner, would have to assign the or transfer the insurance rights after the sale, or Christopher Troy would have to be assigned an agent, and there's just no evidence in the record of an agent. So Judge Murphy, I respectfully disagree with that analysis. I think Snoqual, which is... That's what the district court found, right? I understand that, but I respectfully disagree with Judge Bernal's analysis on that, and the reason for that is I believe under the Snoqual case, which is a California Supreme Court case, although it deals with California Corporation Code Section 313, which talks about a conclusive presumption, it says that nothing under 313 precludes common law theories or California Corporation's Code 208B that you can either have ostensible or actual authority. It said as to the issue of ostensible authority, Snoqual says, the issue is whether there's justifiable reliance by a third party. We'd have to... The statute says that an assignment has to be made in writing and signed by two officers. So there's clear statutory authority, I think. And by the way, Mr. Christopher Troy was the only one who signed the assignment. To get into ostensible authority, as you suggest, would take us clearly beyond the statutory language that the state set forth in the way they wanted these things to be done. So I think those are distinct arguments. Snoqual is dealing with California Corporation's Code Section 313. That's a special statute that says that if two officers of the corporation sign a document, a contract, it creates a conclusive presumption, and the party, the third party who's relying on that, doesn't have to prove that they have authority. But you can't draw any thick conditions in 313 because you only have one signature. Well, I don't think it's that simple, Judge Collins, because actually on the assignment, Chris Troy signed it as, on the bottom, owner of Red Roof Inn. So I think there is at least some evidence that he was not just signing with the authority of secretary. He wasn't the owner of Red Roof Inn. His father was, Pinnacle was, and Pinnacle was owned by his father. We don't have any absolute evidence that he was not limited, that he did not have some interest in Pinnacle. There is no evidence in the record that he was only the secretary of Pinnacle. So I think there is some argument to be made, but I think the stronger argument is the common law theories and California Corporation's Code Section 28B of either actual authority or sensible authority. And that's a distinct argument. We're talking about an insensible authority, whether in fact there's justifiable reliance by a third party. It would seem to me that my client clearly could rely on Chris Troy. He was the only party that was negotiating here. He was the party who made the claim to the insurance company. He was the party who signed on the claim that was eventually the company received $605,000. He was the party who made the specification of what damages. He didn't have any authority to do that, so shouldn't your client sue Christopher Troy? But that's not what Snoqual says. Snoqual says, in the case of say, whether in fact there was some agency relationship. The justifiable reliance has to be on the basis of whether the third party can rely that that party is an agent of the company and justifiably rely on that. What would show the insurance company that Christopher Troy was an agent of Pinnacle? The fact that he made the claim, he specified the damages. He was at the inspection. He was the one who received the $605,000 from the company. And the fact that the company never disputed that. All that contact was with him, not with James Troy. So I think that there's clearly agency. Does the record show who got the $600,000? Pardon me? Does the record show who got the $600,000? It was sent to Pinnacle and then transferred to my client. And my client actually signed on. There was a signature that my client signed with regards to that $605,000. And interestingly enough, DB never asked for the $605,000 back. And it seems to me that there is some argument there of waiver or estoppel. So all I'm trying to point out is it seems to me there are at least tribal issues. The issues here of whether this authority existed, seems to me should not be weighed by a district court. It should have been weighed by a jury. This is more than justice in tow of evidence under the Celtic standard. Even if we would agree hypothetically that there was ostensible authority, that would just resolve the issue of standing the sue and get to the merits. But Mr. Choi also failed to appear for the examination under oath, which is a breach. So why wouldn't that be an alternative? And my argument there, Your Honor, respectfully, is page 40 of the appellee's brief cites a case called Brazil. And that's a California case that says for purposes of the EOU, there has to be showing of actual prejudice. And I believe there is more than enough evidence that that's a tribal issue. Because even according, forgetting about my argument about judicial estoppel, clearly DB agrees that James Choi was the president of this company. And my client did operate the company after the escrow closed. I don't see why they are prejudiced in this case if they could have subpoenaed James Choi. They could have even subpoenaed his wife. So even if Chris Choi did not come down for the depositions, it seems to me there's a tribal issue where they're actually prejudiced. Secondly, Judge Bernal found in his order, interestingly enough, that it was not that Chris Choi simply categorically refused to be deposed, but that there were scheduling conflicts. And he stated that in his deposition. And it seems to me that once again as to the issue of actual prejudice, DB could have simply gone to a court and gotten an order to force him to come into a deposition. They did not do that. So I think that at least raises a tribal issue, that a jury should then weigh and decide whether there was actual prejudice. So my point here is that I think that this should go back to a jury, let them weigh the evidence as to the authority issue and as to the issue of the depositions. Thank you. Let's hear from counsel for DB. Good morning, Your Honor. Derek Blumhart on behalf of Pepele DB Insurance. With respect to the last point that was made, the Griswold Court held that the refusal or failure to submit to an AUO is prejudicial. There doesn't need to be any additional evidence of prejudice. That in and of itself is prejudicial because it prevents an insurance company from fully investigating the nature of the claim and the scope of that claim. And not only in Venezuela, but also the California Fair Plan cases have held that. Carl Choi refused to sit for an EOU. Yes, he did on a number of occasions. We tried on numerous occasions to schedule an EUO. We sent numerous letters and emails, and he either refused to respond over a course of a few months, about five months, and ultimately he was advised that if you do not schedule an EUO by a certain date, that will be grounds to deny the remainder of the claim. What is the information that was needed to be gotten from him? The initial claim was for damage to 31 hotel rooms. That claim was paid. Six months later, after the transfer of the hotel to MS and Sons, there was a subsequent claim made by Greenspan that was representing MS that there was additional damage to 77 additional rooms. DB requested documentation, a proof of loss of that claim, so that they could evaluate it and got no response to the documentation. As a result, they then inspected the premises, and when they arrived for the inspection, they were allowed to inspect two or three rooms and recalled the remaining rooms were occupied by guests. And therefore, they were unable to inspect those rooms to determine the extent of the damage, if any. And as a result of that, the inability to obtain that information, they then noticed the EUO of Mr. Choi, who was— It seems kind of weird. This was in, what, 2019, and he didn't have possession of the property anymore. So it's kind of weird to ask him on this additional claim for damage to have the former owner come in and explain it. That's what I'm confused by. He was the insured. He was the managing person that was managing the claim for the insured. So you're saying he's the insured for that purpose, but he's not the insured for purposes of transferring the claim. So he's the one with the authority, even though they don't even have the property anymore. He's the one who represents the insured, and we have to have his examination. Oh, but he doesn't have any authority to assign the claim on behalf— Do you see the inconsistency there? Respectfully, I do not, because I think they involve two different aspects of his authority. As the secretary and the person that is managing the claim, he is obligated to submit to an examination under oath. He was not entitled to examine M.S. and Sons, because M.S. and Sons was not an insured under the policy. Pinnacle was the insured, and Mr. Troy was handling the claim on behalf of Pinnacle. With respect to his authority to assign, the law requires certain— either he has to have actual authority from the corporation. It doesn't involve insureds. He has to have the actual authority from the corporation to assign it, and there has to be an indication that he has that. If there had been a valid assignment to M.S., would M.S. then have assumed the obligations under the policy to, you know, submit to an E.U.O. such that if there had been a transfer, they would have been the ones as the possessor of the property to come in and explain what was being claimed? I think that there would be an argument that they would have been obligated to do that, but at that point there was no valid assignment that had been made. I thought you noticed the E.O.U. to determine whether or not Christopher Troy was an agent for purposes of this transfer of insurance. No, that's not why his E.U.O. was— What did you do to determine? I mean, Mr. Weiser raised five or six points that would support a conclusion that Mr. Troy was the agent of Pinnacle, including signing his owner. Eventually, I don't think there was ever any written confirmation or other evidence that he was an agent, but what did the insurance company do beyond sitting back to determine whether or not Christopher Troy was an actual or apparent agent, or ostensible, should we say, of Pinnacle? We responded to the claim that he had assigned the proceeds to M.S. and Sons by writing to Mr. Troy saying that the assignment letter was insufficient for D.B. to simply accept the assignment and to dispose of corporate assets that are owned by Pinnacle to some third party. D.B. needed verification that he actually had the authority. Corporation Code 313 doesn't apply to create a conclusive presumption because, as the court noted, that requires two signatures, one from a general operational officer and one from a financial record-keeping officer. In this case, there was no execution by either the president or vice president or board chairman. There was a reference to Mr. Troy as being the former owner, of which he was not, but it didn't designate him as any officer of the corporation, and therefore there's an argument that neither signature, or that his signature didn't even qualify. What do you make of the argument that Snoogle would permit us to conclude that Christopher Troy was the ostensible agent of Pinnacle, notwithstanding the absence of one signature from the assignment form? Well, for ostensible agency to exist, there must be some intentional conduct or neglect on the part of the principal, Pinnacle here, that created a belief in the minds of third persons that an agency exists and a reasonable reliance by that third party. Here, as soon as D.B. was notified of the assignment letter, there was a response saying, this is insufficient to establish an assignment, and that letter was copied to M.S. and Sons. M.S. and Sons was advised by that letter that this assignment was insufficient, and as the district court concluded, any reasonable jury would conclude that that, any reliance would not have been reasonable at that point. And, therefore, the ostensible agency argument was not, would not prevail here. So, your argument on ostensible agency is based primarily on your own letter to the insured with the C.C. to M.S.? It was notification to M.S. and Sons as to the deficiencies in the purported assignment. Whether D.B. advised them or some other party advised them, the fact is that they were advised that there were significant deficiencies within, with that assignment letter. And there was also a request, which was very simple, provide us the verification that Mr. Choi has the authority to assign these proceeds, and we received nothing in response. It would have been a very simple fact or a simple effort to provide that verification if, in fact, he was authorized. It would have been a simple, well, we've acquired, the corporation can only act through its board, and, therefore, there must have been some board action because this is an assignment of a significant corporate asset. We're talking hundreds of thousands of dollars that are being transferred to a party that is not an insured under the policy, and you can certainly understand why D.B. required verification before doing that. Mr. Dowd, your position that the assignment was ineffective and that Pinnacle now being a suspended corporation is incapable of acting, and, therefore, essentially on this technicality you just beat the whole claim? No, we, in fact, we did not address the suspension. The court found that the suspended nature of the company did not factor into the denial of the claim. It was not denied. There was two claims. The first claim was paid, and it was paid to Pinnacle as D.B. was obligated to do. The second claim was denied because there was no assignment and Mr. Troy refused to submit to an AUO so that D.B. could conduct an examination to determine the scope and extent of the additional damage, which they claimed where they refused to provide any documentation of it or a proof of loss or an inspection of the damaged property. The next step, logically, would have been an AUO. The loss occurred while Pinnacle owned the premises, and, therefore, they had the knowledge of what occurred and what was damaged. So, D.B. had nothing in order to evaluate the second claim for damage to the 77 units. And Griswolda and California Fair Plan both say that if he refuses to comply with a condition under the policy to coverage, that is prejudicial and a basis for denying the claim. You deposed Christopher Troy in the discovery phase of the district court action, didn't you? Yes, we did. And what did you learn there about the apparent or actual agency of Christopher Troy as agent of Pinnacle? Mr. Troy testified that he thought he had authority. He did not provide any evidence of any actual authority, and when questioned as to whether or not he discussed that or had any discussions with his father regarding the authority, he couldn't remember. He was not involved in the negotiations for the sale of the hotel, and so, therefore, wasn't privy to any discussions between James Troy and Mr. Patel regarding any assignment of insurance proceeds. So, there was nothing that came out of that deposition to establish that he actually had it, was conveyed authority by the corporation, or that basically he simply thought that he had authority because he was the secretary of the corporation, and the corporation, I think it's corporate code 300, says the corporation can only act through its board of directors. So, there must have been some agency, some authority conveyed to him by the corporation through its board of directors that would have given him the authority to decide it, and there was absolutely no evidence of any of that. With respect to the other issues, judicial estoppel, there was never any inconsistency in the positions taken by DB, and I think I already discussed this. We were talking about two different, you know, Mr. Troy's obligations under the policy versus his authority as a secretary, and secondly, with respect to waiver and estoppel, there was no basis for DB to seek repayment of the $605,000 that they initially paid since it was a proper claim, and they determined that the damage occurred. It was the second claim, this additional damage that was denied, and the circumstances that led to that denial all occurred after the initial payment was made. So, I don't quite understand why we would have requested to repayment of the initial payment probably, and that just doesn't make sense to me, and I think my time is now. Okay, thank you very much for your argument. Okay, let's hear a rebuttal. You've got some time. Thank you. I think my learned counsel's argument here is rebutted by the evidence at volume three, pages, I believe, 346 through 355 are two letters, which were contemporaneous with this original first claim. Those are letters from Louis Brisbois, who counseled in this case. They were the ones who made the argument there that they had to take the EOU of Mr. Choi. There's no mention of this second claim. The only mention there is of the fact that they want to establish that he had authority to, in fact, assign the claim to MS and Sons. And, in fact, there's no evidence in the record as far as this second claim and not being provided, so I fail to see how counsel's argument follows through on that. Second of all, as far as what Judge Bernal found, what he found was that as to the issue of reasonable reliance without bylaws, he felt that that would not be reasonable. He made no argument, as counsel pointed out, about this issue, about whether, in fact, Mr. Choi was relying upon, I forgot what he exactly said, but whether, in fact, he was relying on, whether he had the authority under the second claim. Now, I would say one other point here as far as the issue of agency. Even if DB says now we can't go back and ask for the money that we made on the first claim, why did they pay it in the first place? They obviously relied on Mr. Choi as an agent of Pinnacle to make that first claim, to be on that first claim. Mr. Choi was the only one they had contact with for Pinnacle. They had no contact with James Choi. So they accepted Mr. Choi's claim of the damages. They accepted his claim that he was operating as an agent of Pinnacle. Well, but Pinnacle was the insured, and he was their secretary, so there needn't have been any agency at that point, right? I mean, they made a claim, and DB paid it. That's just simply the way business goes. So that's the point. The point is, for ostensible authority, even DB believed that he was an agent of Pinnacle, and there was justifiable reliance on that, and they paid on that. Well, I would think a secretary of the corporation or even an administrative official could file an insurance claim on behalf of an insured, right? Well, they can rely on that, but he's making the claim also that he transferred it, and he had the authority, I would point out, in the deposition. I believe it's at page 379. I asked a point-blank question. I asked the court to just bear with me. It's very short. And DB rejected the purported assignment on the ground that Chris Choi lacked the authority to sign Pinnacle's claim. Is it correct to say that you disagreed with the statement? This is to Chris Choi that I asked, because as we indicated earlier, your secretary of Pinnacle Hospitality had the authority to sign. Is that a correct answer? Yes. On May 9, 2018, DB informed the insured that James Choi, the president of the corporation, would need to execute any assignment of Pinnacle's property damage claims. So is it fair to say you disagreed with that statement because you had the authority as the secretary to sign the claim? Yes. My point is he said point-blank that he had actual authority, and I don't see why that doesn't raise a reasonable inference that he had actual authority on behalf of the company to make the transfer. What that authority is, how that authority arises, I think that's up for a jury to decide and weigh. But whether, in fact, there's a tribal issue, I think there's clear evidence to that, certainly as to extensive authority. One last point, and I know my time is up, but I had your time. You're over your time, so one last point. The point is that Judge Bernal made very clear on the EOU that it was because of scheduling conflicts, and he cited to Mr. Belshaw's declaration. So I don't see whether there's evidence that it was a categorical denial by Chris Choi that he would not submit to a deposition. With that, I thank the court. Okay. Thank you very much for your argument. The case just argued is submitted.
judges: WATFORD, COLLINS, Murphy